***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Pfeiffer. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commissions REVERSES the holding of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. There is a question whether the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. There is a dispute regarding whether plaintiff was an "employee" as defined in the Act or whether he was an independent contractor.
3. The employers are not self-insured.
4. Plaintiff was involved in a motor vehicle accident on December 23, 1998. As a result of this motor vehicle accident, plaintiff suffered injuries including angulated displacement fracture of the left humeral shaft, left femoral shaft with significant angulation and displacement, fractured left tibia, closed head injury, significant depression, and radial nerve palsy.
5. Plaintiff contends he was an employee at the time of his motor vehicle accident on December 23, 1998. Defendant contends that plaintiff was an independent contractor on the date of his motor vehicle accident on December 23, 1998.
6. Plaintiff last worked on December 23, 1998.
7. Stipulated into evidence in this matter were the following stipulated exhibits:
(1) plaintiff's medical records;
 (2) the contract between Carolina Transportation and The Hilton of Charlotte; and
 (3) six pages of photographs. In addition, defendant-Carolina Transportation introduced and the undersigned admitted into evidence the following exhibits:
(1) plaintiff's city application for a taxicab driver permit;
 (2) plaintiff's "driving information" submitted to defendant-Carolina Transportation;
(3) a criminal record check of plaintiff; and
 (4) the independent contractor acknowledgement signed by plaintiff on December 8, 1998.
 In addition, the Industrial Commission takes judicial notice of the Industrial Commission Forms 18, 33, 33R, and the amended Form 33.
8. The parties agreed at the hearing to a bifurcation of the issues in this matter. Accordingly, the present Opinion and Award will address only the issue of whether the parties are subject to the provisions of the Act, and if so, whether plaintiff sustained a compensable injury by accident on December 23, 1998.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the dates of the deputy commissioner hearings in this matter, plaintiff was twenty-nine (29) years old. Plaintiff went through the tenth grade, obtained his G.E.D. when he was sixteen years old, and has attended approximately one year of college courses.
2. On December 3, 1998, plaintiff was hired by Al Wheeler, an agent for defendant-employer Carolina Transportation Co., Inc. to drive a Lincoln Town Car taxicab. In order to become a driver for Carolina Transportation, plaintiff had to have a valid drivers license, a business license and a taxicab driver permit from the City of Charlotte, and had to pass a criminal record check and drug test.
3. On December 8, 1998, plaintiff signed an acknowledgement wherein he agreed that as a driver for Carolina Transportation, he was not an employee or agent, but instead was an independent contractor. As such, plaintiff did not receive employment benefits of any kind. In addition, Carolina Transportation did not withhold income taxes or social security.
4. Plaintiff was told he could lease a vehicle each day to fulfill a contract Carolina Transportation had with The Hilton of Charlotte to provide transportation for its guests to and from the Charlotte-Mecklenburg International Airport. This contract required defendant to provide shuttle service from the Hilton to the airport every thirty (30) minutes during peak hours and allowed defendant to have two reserved parking spots in front of the hotel for a fee of $1250.00 per month.
5. On December 4, 1998, Mr. Al Wheeler trained plaintiff and explained to him in intricate detail how to perform this job which included specific directions as to the one and only route plaintiff was to drive between the Hilton and the airport. Plaintiff was required to report to the Hilton Hotel by 7:00 a.m. to begin his shift, work six days a week, and obtain permission to make any changes to his schedule. In addition, if plaintiff went to a destination other than the Hilton or the airport, he was required to first obtain permission from defendant's dispatcher who also informed plaintiff of the appropriate fare for such trips as there were no meters in the vehicles plaintiff drove for defendant-employer.
6. Based upon the terms of the contract between Carolina Transportation and the Hilton, plaintiff was given instructions on how to dress and was required by defendant-employer to wear a suit when he was going to drive the Hilton/airport route. Plaintiff, as all drivers, was prohibited from smoking in the vehicles and was instructed to keep the vehicles clean. Plaintiff also was required to refuel the vehicle upon his surrender of it at the end of his shift. Carolina Transportation maintained insurance on the vehicles and performed all repairs and maintenance work on the cars.
7. All of the vehicles driven for defendant by plaintiff had a Carolina Transportation logo on their sides. Drivers including plaintiff rented the vehicles for a set flat fee each day. Plaintiff was paid on a commission basis wherein defendant received forty percent (40%) of the first $200.00 and fifty percent (50%) of anything over $200.00 of fares he brought in each day. Plaintiff kept all of his tips. Fares were set by Carolina Transportation, based upon a fee structure from the Hilton with whom Carolina Transportation had contracted.
8. Mr. Wheeler testified that at the time plaintiff was hired Carolina Transportation was hiring drivers to fulfill their contracts with the airport and the Hilton thereby indicating that fulfillment of these contracts was a primary business purpose of Carolina Transportation. Mr. Wheeler further testified that he always sent new drivers to the airport to observe what was going on and explained to them that that was what they would do. Mr. Wheeler also testified that services provided pursuant to transportation contracts between Carolina Transportation and the airport, the Hilton, and other hotels constituted a majority of the business the normal driver does. If Carolina Transportation's drivers had been free to go anywhere they liked during the time they leased a vehicle, fulfillment of Carolina Transportation's contracts would have been in jeopardy; therefore, the totality of the evidence does not support Mr. Wheeler's testimony that drivers' were free to go anywhere and do anything they liked including personal errands during the time the drivers leased a vehicle.
9. The greater weight of the evidence indicates that if plaintiff deviated from any of defendant's employment terms, policies, or procedures, he was in danger of losing his job; therefore, defendant exercised the control necessary to render plaintiff an employee and not an independent contractor pursuant to the Workers' Compensation Act.
10. On December 23, 1998, the Charlotte airport closed due to inclement weather conditions and defendant requested plaintiff drive a client from Charlotte to Raleigh-Durham International Airport in Raleigh, North Carolina. In accordance with the usual and customary procedure, defendant provided plaintiff with a fare quote of $300.00 for this trip. Plaintiff dropped off his passenger at the airport in Raleigh and had begun his return trip to Charlotte when he was involved in a severe automobile collision resulting in multiple physical injuries. Plaintiff's trip furthered the business purpose of defendant; therefore, plaintiff's automobile accident on this date arose out of the course and scope of his employment with defendant.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The North Carolina Supreme Court has held that a contract declaring one an independent contractor free from the control by an owner does not in fact establish that relationship. Watkins v. Nurrow, 253. N.C. 653,118 S.E.2d 5 (1961). In addition, our Courts generally look beyond the contract to the actual relationship of the parties to determine the question of whether or not one is an independent contractor. Grouse v.DRB Baseball Management, Inc., 121 N.C. App. 376, 465 S.E.2d 568 (1996). Therefore, the independent contractor acknowledgment signed by plaintiff on December 8, 1998, is not dispositive in determining whether or not plaintiff's relationship with defendant was that of an employee or independent contractor.
2. In Hayes v. Elon College, 224 N.C. 11, 29 S.E.2d 137 (1944), affirmed in McCown v. Hines, 353 N.C. 683, 549 S.E.2d 175 (2001), the North Carolina Supreme Court laid out an eight factor test to determine whether a claimant is an employee as defined by the Workers' Compensation Act in N.C.G.S. § 97-2(2). The eight factors are whether the person employed: (a) is engaged in an independent business, calling or occupation; (b) is to have the independent use of his special skill, knowledge or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time. No one factor by itself is controlling; instead, the decisive factor is whether the hiring party retained the right of control or superintendence over the worker. In this case, plaintiff was not engaged in an independent business, he paid a rental fee each day to drive defendant's vehicles, and used no special skills in driving defendant's vehicles. Plaintiff was in the regular employ of defendant and was not allowed to select his own working hours as he was required to be at work six days a week at 7:00 a.m. Plaintiff was not allowed to have assistants or to obtain someone else to drive for him. Plaintiff's wages were based upon a percentage of the fares he transported each day. Plaintiff was subject to discharge if he did not assist in carrying out the contract between defendant and the Hilton by waiting for passengers in defendant's leased spaces at the Hilton or elected to drive a route between the airport and the Hilton other than exactly as instructed by defendant. The totality of the evidence giving no greater weight to any factor than another indicates that defendant exercised a very large degree of control over plaintiff's actions in carrying out his job duties of driving vehicles for defendant; therefore, plaintiff was not an independent contractor and was an employee of defendant.
3. In State, ex rel. Employment Sec. Com'n v. Faulk, 88 N.C. App. 369,363 S.E.2d 225 (1988) the North Carolina Court of Appeals held that drivers were employees and found the case of Alford v. Victory Cab Co.30 N.C. App. 657, 228 S.E.2d 43 (1976) wherein the driver was held an independent contractor clearly distinguishable. In Alford, drivers rented the taxicabs for a flat, daily fee, kept all fares and tips and could use the cab for their own purposes; on the contrary, in Faulk, the driver did not pay a fee but had to pay a percentage of his income to the owner. More recently, the case of Fulcher by Wall v. Willard's CabCompany, 132 N.C. App. 74, 511 S.E.2d 9 (1999) did not overrule Faulk and instead cited the Alford case and found the driver to be an independent contractor in both cases because the driver paid a flat fee to the owner, kept all his fares and tips, and the owner had no right to control the driver during his shift. The case at bar is highly analogous to theFaulk case which provides further authority that plaintiff was an employee of defendant and not an independent contractor due to the fact that plaintiff was required to pay a percentage of his income to defendant following each shift.
4. Plaintiff was an employee of defendant within the meaning of the Workers' Compensation Act and the parties to this action are subject to and bound by its provisions. N.C.G.S. § 97-2(2).
5. Plaintiff suffered an injury by accident arising out of the course and scope of his employment with defendant on December 23, 1998. N.C.G.S. § 97-2(6).
6. The evidentiary record of this matter includes no information concerning the extent of plaintiff's disability or compensable consequences as a result of his injury by accident; therefore, these issues are reserved for judgment by the Full Commission, if necessary, at a later time.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 ORDER
1. This matter is hereby REMANDED to the deputy commissioner section of the North Carolina Industrial Commission for the taking of additional evidence and entry of an Opinion and Award as to what benefits plaintiff is entitled to receive pursuant to the Workers' Compensation Act as the result of his compensable injury by accident on December 23, 1998.
2. IT IS FURTHER HEREBY ORDERED that this matter is REFERRED to the Fraud Investigation Unit to ascertain whether further investigation is warranted or necessary regarding defendant-Carolina Transportation Co.'s alleged noncompliance with N.C.G.S. §§ 97-93 and 97-94.
3. Defendants shall bear the costs due the Commission.
This the 27th ___ day of September 2002.
 S/___________ BUCK LATIMORE CHAIRMAN
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER